**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MIRSAD HAJRO; JAMES R. MAYOCK, *Plaintiffs-Appellees*, <br><br> v. <br><br> UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; T. DIANE CEJKA, Director, USCIS National Records Center; ROSEMARY MELVILLE, USCIS District Director of San Francisco; JEH JOHNSON, Secretary, Department of Homeland Security[*]; LORETTA E. LYNCH, Attorney General, <br> *Defendants-Appellants*. | No. 11-17948 <br><br> D.C. No. 5:08-cv-01350-PSG |
| MIRSAD HAJRO; JAMES R. MAYOCK, *Plaintiffs-Appellees*, <br><br> v. <br><br> UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; T. DIANE CEJKA, Director, USCIS National Records Center; ROSEMARY MELVILLE, USCIS District Director of San Francisco; JEH JOHNSON, | No. 12-17765 <br><br> D.C. No. 5:08-cv-01350-PSG <br><br> ORDER AND AMENDED OPINION |

Secretary, Department of Homeland
Security; LORETTA E. LYNCH,
Attorney General,
                    *Defendants-Appellants*.

Appeal from the United States District Court
for the Northern District of California
Paul S. Grewal, Magistrate Judge, Presiding

Argued and Submitted
February 3, 2015–San Francisco, California

Filed October 23, 2015
Amended January 19, 2016

Before: Richard C. Tallman and Johnnie B. Rawlinson,
Circuit Judges, and Stephen Joseph Murphy, District
Judge.**

Order;
Opinion by Judge Tallman;
Partial Concurrence and Partial Dissent by Judge
Rawlinson

---

\* Jeh Johnson is substituted for Michael Chertoff as Secretary,
Department of Homeland Security and Loretta E. Lynch is substituted for
Eric H. Holder, Jr., as Attorney General. Fed. R. App. P. 43(c)(2).

\** The Honorable Stephen Joseph Murphy III, United States District
Judge for the Eastern District of Michigan, sitting by designation.

## SUMMARY[***]

### Freedom of Information Act

The panel filed an amended opinion vacating the district court's permanent injunction, reversing the district court's summary judgment order, vacating the attorneys' fees award, and remanding for further proceedings in a Freedom of Information Act action brought against the United States Citizenship and Immigration Services ("USCIS") by permanent resident Misrad Hajro and his attorney James Mayock; denied the petition for panel rehearing; and denied on behalf of the court the petition for rehearing en banc.

The district court found that USCIS engaged in a pattern or practice of violating the Freedom of Information Act's time limits, and entered summary judgment in favor of the plaintiffs.  The USCIS challenged the district court's jurisdiction to enforce a 1992 Settlement Agreement entered into by Mayock and USCIS's predecessor agency, the Immigration and Naturalization Service, concerning processing of FOIA requests.  The district court entered the summary judgment order, USCIS filed its notice of appeal, and then the district court entered a permanent injunction.

The panel held that this court had jurisdiction to review the summary judgment order, but dismissed USCIS's challenge to the scope of the permanent injunction order for lack of jurisdiction under Fed. R. App. P. 4(a)(2).

---

[***] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Reviewing the summary judgment order, the panel held that the jurisdictional rule announced in *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994) (holding that if a district court wished to retain jurisdiction to later enforce the terms of a settlement agreement, the order dismissing a case with prejudice must incorporate the terms of the settlement agreement or expressly retain jurisdiction), applied retroactively to the 1992 Settlement Agreement. The panel held that because *Kokkonen* applied retroactively and the 1992 district court order did not retain jurisdiction over the prior lawsuit's Settlement Agreement, the district court did not have the inherent power to enforce the terms of the Settlement Agreement. The panel also held that while the district court may assert supplemental jurisdiction over the Settlement Agreement claims, plaintiffs failed to show an "unequivocally expressed" waiver of sovereign immunity. The panel therefore reversed summary judgment in favor of plaintiffs as to Claims One and Two.

The panel held that the factual record was not sufficiently developed to determine whether plaintiff Mayock had standing to bring a FOIA pattern or practice claim. The panel held that Mayock's single FOIA response addressed to another lawyer at his firm was insufficient to prove personal harm. The panel also held that plaintiff Hajro lost standing to bring a pattern or practice claim during the pendency of this appeal when he was granted his citizenship, because the probability that USCIS's delays would impair Hajro's lawful access to information in the future was now remote. The panel, therefore, reversed and remanded for further fact finding as to Mayock's standing and dismissed Hajro's claim as moot.

Judge Rawlinson concurred in part and dissented in part. Judge Rawlinson agreed with the majority except as to the issue of Mayock's standing. Judge Rawlinson would reverse the district court's ruling that Mayock had standing to pursue an action in his own right, and remand for dismissal of all claims.

---

**COUNSEL**

Mark W. Pennak (argued), Appellate Staff Attorney; Leonard Schaitman, Assistant Director; Melinda Haag, United States Attorney; Stuart F. Delery, Assistant Attorney General, Department of Justice, Washington, D.C.; Ila C. Deiss, Assistant United States Attorney, San Francisco, California, for Defendants-Appellants.

Kip Evan Steinberg (argued), San Rafael, California; Robert H. Gibbs and Robert Pauw, Gibbs Houston Pauw, Seattle, Washington, for Plaintiffs-Appellees.

Russell Abrutyn, Marshal E. Hyman & Associates, Troy, Michigan; Aaron C. Hall, Joseph Law Firm, P.C., Aurora, Colorado, for Amicus Curiae American Immigration Lawyers Association.

---

**ORDER**

The panel has voted to amend its previous opinion and issues the following opinion to replace it. With this amendment, Judges Tallman and Murphy have voted to deny the Appellants' petition for panel rehearing; Judge Rawlinson has voted to grant the Appellants' petition for panel rehearing. The Appellants' petition for panel rehearing is **DENIED**.

The panel has voted to deny the Appellees' petition for panel rehearing; Judges Tallman and Rawlinson have voted to deny the petition for rehearing en banc and Judge Murphy so recommends. Appellees' petition for rehearing and petition for rehearing en banc are **DENIED**.

The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

No further petitions for rehearing or petitions for rehearing en banc will be entertained.

**OPINION**

TALLMAN, Circuit Judge:

United States Citizenship and Immigration Services and federal officer co-defendants (collectively "USCIS") challenge the district court's grant of summary judgment, a permanent injunction, and an attorneys' fees award in favor of Plaintiffs Mirsad Hajro and James R. Mayock. The district

court found that USCIS engaged in a pattern or practice of violating the Freedom of Information Act's ("FOIA") time limits, 5 U.S.C. § 552(a)(6)(A), (B), (C) (2012). The statutory time limits require an agency to determine within twenty days whether to comply with a FOIA request or, in the alternative, notify the requester of any "unusual circumstances" requiring an extension in responding to the request. *See* 5 U.S.C. § 552(a)(6)(A), (B). If the agency fails to comply with either, a FOIA requester can proceed directly to district court where the agency must show "exceptional circumstances" justifying its untimeliness and due diligence in remedying the violation. *See* 5 U.S.C. § 552(a)(6)(C). USCIS also challenges the district court's jurisdiction to enforce a 1992 Settlement Agreement entered into by attorney James Mayock and USCIS's predecessor agency, the Immigration and Naturalization Service ("INS").

We have jurisdiction under 28 U.S.C. § 1291 to review the summary judgment order. We dismiss USCIS's challenge to the permanent injunction for lack of jurisdiction given its prematurely filed notice of appeal. We hold that while the district court may assert supplemental jurisdiction over the Settlement Agreement claims, Plaintiffs have failed to show an "unequivocally expressed" waiver of sovereign immunity. We clarify the standing requirements to assert a FOIA pattern or practice claim. As such, we vacate the injunction and remand with instructions to conduct further proceedings on an open record to determine in the first instance whether Mayock has standing to bring a pattern or practice claim under this standard. We also find Hajro's pattern or practice claim moot. Therefore, the summary judgment order is reversed and remanded. We vacate and remand the attorneys' fees award for further consideration in light of this opinion.

# I

## A

James Mayock has been an immigration attorney for over thirty years. As part of Mayock's ongoing immigration caseload, he files requests under FOIA to obtain the alien registration files for his clients. Mayock's declaration states that USCIS has never produced the requested records within FOIA's statutory twenty-day time limit. *See* 5 U.S.C. § 552(a)(6)(A). Nor has the government provided written notice setting forth any "unusual circumstances" for an extension of time beyond the statutory limit. *See* 5 U.S.C. § 552(a)(6)(B). In support of his pattern or practice claim, Mayock provided a recent FOIA response addressed to another attorney at Mayock's law firm. USCIS responded almost eight months after the initial request was placed. Mayock also provided declarations from twenty-six other immigration attorneys who have encountered similar, routine delays. All twenty-six attorneys included copies of their own delayed FOIA requests from recent years. USCIS did not rebut this evidence before the district court. *Hajro v. U.S. Citizenship & Immigration Servs.* ("*Hajro I*"), 832 F. Supp. 2d 1095, 1105 (N.D. Cal. 2011).

In addition to the present lawsuit, Mayock previously filed a lawsuit against the INS, USCIS's predecessor agency, about twenty-five years ago. Mayock similarly alleged that INS had a pattern or practice of violating various provisions of FOIA. Mayock, together with other immigration attorneys, submitted declarations to demonstrate that INS often took months to respond to FOIA requests, far in excess of the statutory time limit, then ten days. *See* 5 U.S.C. § 552(a)(6)(i) (1988). The district court agreed and granted

summary judgment in favor of Mayock, directing INS to issue the appropriate notices for extension of time required by FOIA and enjoining the San Francisco District Office of the INS from failing to comply with the statutory timing requirements. *Mayock v. Nelson*, 714 F. Supp. 1558 (N.D. Cal. 1989), *rev'd and remanded*, 938 F.2d 1006 (9th Cir. 1991).

On appeal, we reversed and remanded. We held that the district court had overlooked the existence of genuine issues of material fact as to whether increasing workloads at INS offices created "exceptional circumstances" justifying its failure to respond within the statutory time limits, and whether the agency had demonstrated "due diligence" in responding to requests for information urgently needed by aliens who faced pending deportation or exclusion proceedings. *See Mayock v. Nelson*, 938 F.2d 1006, 1007–08 (9th Cir. 1991).

Upon remand, the parties entered into a settlement agreement ("the Settlement Agreement"), in which INS agreed to implement expedited processing of a FOIA request where the requester demonstrates that an individual's life or personal safety would be jeopardized; or where the requester's substantial due process rights would be impaired by the failure to process a request immediately. The district court dismissed the case with prejudice but the parties subsequently filed the Settlement Agreement with the court in 1992. The district court's dismissal order did not expressly retain jurisdiction of the Settlement Agreement nor did it incorporate its terms into the order.

**B**

Mirsad Hajro was a permanent resident of the United States who applied for naturalization in 2003. In October 2007, USCIS notified Hajro that his naturalization application had been denied based on evidence in his alien registration file that allegedly revealed false testimony regarding his foreign military service. As part of his appeal from the denial of his application for citizenship, Hajro filed a FOIA request with the USCIS National Records Center in November 2007 seeking a copy of his alien registration file. Hajro requested expedited processing of his FOIA request under the terms of the 1992 Settlement Agreement.

Since 2007 USCIS has used a three-track system for processing FOIA requests: "Track 1" for simple requests, "Track 2" for complex inquiries that require additional time, and "Track 3" for expedited processing for individuals subject to removal proceedings and scheduled for a hearing before an immigration judge. Special FOIA Processing Track, 72 Fed. Reg. 9017–01 (Feb. 28, 2007). In responding to Hajro's FOIA request, USCIS denied Hajro's expedited request and processed his request under Track 2. USCIS's letter did not include notice of any "unusual circumstances" justifying an extension of the current twenty-day time limit. *See* 5 U.S.C. § 552(a)(6)(A), (B).

It is undisputed that USCIS failed to issue Hajro's FOIA request within the twenty-day time limit. *Hajro I*, 832 F. Supp. 2d at 1101. As a result of the delay, Hajro appealed the

denial of his naturalization application without the evidence relied upon by USCIS in denying it.[1] *Id.* at 1112.

While this appeal was pending, Hajro successfully challenged USCIS's denial of citizenship and he has since been naturalized as a U.S. citizen. *See Hajro v. Barrett*, 849 F. Supp. 2d 945 (N.D. Cal. 2012).

## C

Mayock and Hajro initiated this action in March 2008. They sought declaratory and injunctive relief under FOIA and the Administrative Procedures Act ("APA"), and enforcement of the 1992 Settlement Agreement. Plaintiffs' First Amended Complaint ("FAC"), filed June 10, 2008, asserts nine causes of action:

> (1) "Track 3" of Defendants' current, multi-track policy violates the Settlement Agreement;
>
> (2) Defendants' denial of Hajro's request for expedited processing also violates the Settlement Agreement;

---

[1] On March 4, 2008, the National Records Center identified 442 pages responsive to Hajro's request, and forwarded 356 pages in their entirety and 8 pages in part. USCIS withheld 78 pages. After Hajro's FOIA administrative appeal, on July 31, 2008, USCIS released an additional 12 pages and 1 page in part. The district court determined that "none of the documents released [] by USCIS contain[ed] even a factual reference to his purportedly inconsistent or misleading statements." *Hajro I*, 832 F. Supp. 2d at 1112.

(3) The timing by which Defendants provided Hajro with the material responsive to his FOIA request violated FOIA Section 552(a)(6)(A) and 6 C.F.R. § 5.6(b);

(4) Defendants' failure to notify Hajro of the "unusual circumstances" that prevented USCIS from processing his FOIA request within the 20-day statutory limit violated 6 C.F.R. § 5.5(c)(1);

(5) Defendants have a pattern or practice of failing to comply with the timing requirements set forth by FOIA Sections 552(a)(6)(A), (B), (C);

(6) Defendants unlawfully withheld the information requested by Hajro in violation of [] [5 U.S.C.] Section 551 *et seq*. and 555(b), as well as Sections 702, 704, and 706 of the APA;

(7) Such withholding of nonexempt material violated Hajro's due process rights because it interfered with his ability to adequately appeal his naturalization denial and violated his right to a fair hearing . . . ;

(8) Defendants' implementation of the "Track 3" policy violates the Fifth Amendment guarantee of Equal Protection; and

(9) Adoption of the "Track 3" policy without notice and comment rulemaking procedure violated Section 553 of the APA.

*Hajro I*, 832 F. Supp. 2d at 1102–03.

USCIS moved for summary judgment on the FAC in its entirety. Plaintiffs opposed Defendants' motion and themselves moved for summary judgment.

On October 13, 2011, the district court filed its summary judgment order. *Id.* at 1095. The district court ruled in Plaintiffs' favor as to all but Claim Eight.[2]

On December 12, 2011, USCIS filed a notice of appeal (No. 11-17948) citing the summary judgment order. After receiving input from both parties in drafting the form of an injunction, the district court issued its final judgment order and entered a permanent injunction on May 7, 2012. USCIS did not amend its notice of appeal to include the permanent injunction.

On October 15, 2012, the district court granted in part Plaintiffs' motion for attorneys' fees and costs. *Hajro v. USCIS* ("*Hajro II*"), 900 F. Supp. 2d 1034 (N.D. Cal. 2012). Defendants filed a timely notice of appeal (No. 12-17765) challenging that decision on December 14, 2012.

---

[2] It granted summary judgment in favor of former Attorney General Eric Holder with respect to all nine causes of action; and in favor of former Homeland Security Secretary Janet Napolitano, T. Diane Cejka, and Rosemary Melville as to the third, fourth, fifth, and sixth causes of action.

Our Appellate Commissioner, in an order dated January 4, 2014, asked both parties to address whether we have jurisdiction over the summary judgment and permanent injunction appeal (No. 11-17948) in light of the fact that USCIS filed its notice of appeal after the summary judgment order but before entry of the actual permanent injunction.

USCIS now challenges only Claims One and Two related to the 1992 Settlement Agreement, Claim Five—the pattern or practice claim—and the scope of the permanent injunction.

## II

We hold that we have jurisdiction to review the summary judgment order, but dismiss USCIS's challenge to the permanent injunction for lack of jurisdiction under Federal Rule of Appellate Procedure ("FRAP") 4(a)(2).

The requirement to file a notice of appeal is "mandatory and jurisdictional." *Browder v. Dir., Dep't of Corr. of Ill.*, 434 U.S. 257, 264 (1978). The government must file a notice of appeal within sixty days of the date of a final judgment or an appealable order. FRAP 4(a)(1)(B). However, a party may prematurely appeal under FRAP 4(a)(2):

> A notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry.

The issue here is whether USCIS's December 12, 2011, notice of appeal can be treated as filed on May 7, 2012—the date the district court filed its final judgment and permanent

injunction—such that USCIS can challenge *both* the summary judgment order and the permanent injunction.

Two cases govern this jurisdictional issue. First, the U.S. Supreme Court in *FirsTier Mortgage Insurance Co. v. Investors Mortgage Ins. Co.*, held that FRAP 4(a)(2) "permits a notice of appeal from a nonfinal decision to operate as a notice of appeal from the final judgment only when a district court announces a decision that *would be* appealable if immediately followed by the entry of judgment." 498 U.S. 269, 276 (1991) (emphasis in original). There, the appellant filed a notice of appeal after the district court orally ruled from the bench that it was granting respondent's summary judgment motion while simultaneously asking the parties for suggested findings of fact and conclusions of law for its formal order. *Id.* at 270–71. The Supreme Court concluded that FRAP 4(a)(2) rescued the premature notice of appeal, stating that "Rule 4(a)(2) was intended to protect the unskilled litigant who files a notice of appeal from a decision that he reasonably but mistakenly believes to be a final judgment . . . ." *Id.* at 276.

While other circuits have generously interpreted FRAP 4(a)(2) and *FirsTier*, the Ninth Circuit has narrowly construed both. *Compare Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 223 (D.C. Cir. 2011) (emphasizing objective "immediately appealable" standard regardless of counsel's subjective reasonableness in filing the notice of appeal), *with Kendall v. Homestead Dev. Co.* (*In re Jack Raley Constr., Inc.*), 17 F.3d 291, 294 (9th Cir. 1994) (concluding appellants had no reasonable belief that notice of appeal was effective especially where they requested permission to brief and argue remaining issue); *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1482–83 (9th Cir. 1996). *See*

*also Brown v. Columbia Sussex Corp.*, 664 F.3d 182, 188–89 (7th Cir. 2011) (reading *FirsTier* "to hold that Rule 4(a)(2) will save a premature notice if, *regarding the claim being appealed*, the entry of judgment is all that is left for the court to do" (emphasis in original)). As USCIS notes, there are many similarities between *FirsTier* and this case that may have warranted a different outcome had we decided this case solely on FRAP 4(a)(2) and *FirsTier*. However, our case law post-*FirsTier* is clear: "a premature notice of appeal is valid under FRAP 4(a)(2) when '[a]ll that remained was the clerk's ministerial task of entering a Rule 58 judgment.'" *Kennedy*, 90 F.3d at 1483 (quoting *In re Jack Raley Constr., Inc.*, 17 F.3d at 294).

In *Kennedy*, we addressed the merits of the summary judgment order but dismissed the appellant's challenge to the district court's award of attorneys' fees for want of jurisdiction. 90 F.3d at 1479. After the district court granted defendant Applause's summary judgment motion, Kennedy filed a notice of appeal. *Id.* at 1480. Subsequently, Applause moved for attorneys' fees and Rule 11 sanctions. *Id.* The district court denied the Rule 11 motion for sanctions, but granted in part Applause's motion for attorneys' fees without determining the amount of fees and costs. *Id.* Prior to the determination of the fees, Kennedy filed a "Notice of Amended Appeal" from the order. *Id.* Because Kennedy filed the notice of appeal before the district court calculated the fees and costs, we addressed the merits of Kennedy's claim based on the summary judgment order, but dismissed the challenge to the attorneys' fees award as premature. *Id.* at 1482.

We reasoned that, because the amount of fees had yet to be determined and the court had requested further

submissions from both parties to finalize the fee amount, the district court's order was not one "that *would be* appealable if immediately followed by the entry of judgment." *Id.* at 1483 (quoting *FirsTier*, 498 U.S. at 276). In other words, more than a ministerial task remained. *Id.* (citing *In re Jack Raley Constr., Inc.*, 17 F.3d at 294).

Here, the district court's October 13, 2011, summary judgment order addressed both cross-motions for summary judgment and all of Plaintiffs' claims. *Hajro I*, 832 F. Supp. 2d at 1099–1100. Because the district court disposed of all claims, we find that the summary judgment order "would be" immediately appealable if immediately followed by the entry of judgment. However, like *Kennedy*, the district court requested proposed forms of injunction from both parties in order to craft the permanent injunction. USCIS could not have "reasonably but mistakenly believe[d]" their notice of appeal included the permanent injunction when the parties continued to debate the final language and scope of the injunction. *FirsTier*, 498 U.S. at 276. The claim USCIS now appeals—the scope of the permanent injunction—would not be immediately appealable because the scope and language of the injunction were not yet final when the government filed the notice of appeal. The issuance of the permanent injunction where the parties continued to debate the language was not merely ministerial.

To be clear, a significant amount of overlap exists between the summary judgment order and the permanent injunction. For example, both orders assert subject matter jurisdiction over the Settlement Agreement and provide relief

for Plaintiffs' pattern or practice claim.[3]    However, the

---

[3] For example, compare part of the Summary Judgment Order with the first two paragraphs of the Permanent Injunction.    The Summary Judgment Order provides, in part:

> [P]artial summary judgment is GRANTED in favor of Plaintiffs on Plaintiffs' claims for injunctive relief requiring USCIS to: 1) provide a copy of a requestor's file within the twenty-day time limit mandated by 5 U.S.C. § 552(a)(6)(A); and 2) give the written notice mandated by 5 U.S.C. § 552(a)(6)(B) if an extension of time is needed due to "unusual circumstances". . .

> [P]artial summary judgment is GRANTED in favor of Plaintiffs on Plaintiffs' claim that USCIS's Track 3 FOIA processing policy and regulation violates the Settlement Agreement and was promulgated in violation of the APA and FOIA . . .

*Hajro I*, 832 F. Supp. 2d at 1099–100.    The Permanent Injunction provides, in part:

> Having determined [] [USCIS] to be in violation of certain provisions of the [FOIA] for the reasons set forth in the court's order of October 13, 2011 on cross-motions for summary judgment, including FOIA's timing provisions as set forth in 5 U.S.C. § 552(a)(6), the court hereby orders that:

> 1) USCIS shall comply with the requirements set forth in 5 U.S.C. § 552(a)(6)(A) and (B).

> a) USCIS shall provide a copy of a requestor's alien registration file within the twenty–business–day time limit mandated by 5 U.S.C. § 552(a)(6)(A)(i).

> b) USCIS shall make a determination with respect to any FOIA appeal within the twenty–business–day time limit mandated by 5 U.S.C. § 552(a)(6)(A)(ii).

nationwide scope of the permanent injunction became apparent only after the district court issued the permanent injunction on May 7, 2012.**⁴** While we do not exercise jurisdiction directly over the district court's permanent injunction nor opine on its scope, our reversal of the summary judgment order will inevitably undermine the justification for the permanent injunction.**⁵**

---

> c) USCIS shall issue the written notice mandated by 5 U.S.C. § 552(a)(6)(B) to a requestor if an extension of an additional ten business days is needed due to "unusual circumstances." This written notice must set forth the unusual circumstances, as defined in 5 U.S.C. § 552(a)(6)(B)(iii) for such extension and setting a new response date. The final response date shall be within 30 business days of the original request date.
>
> 2) USCIS shall follow, implement, and execute the terms of the 1992 Mayock Settlement Agreement. . . .

*Id.* at 1120.

**⁴** The permanent injunction's final paragraph states: "4) USCIS shall issue a written notice to the USCIS National Records Center describing the terms of this permanent injunction and instructing the National Records Center regarding compliance with the terms of this injunction." *Hajro I*, 832 F. Supp. 2d at 1120.

**⁵** In crafting a permanent injunction of national consequence, the district court must consider the likelihood of recurrence, the effect on the public of disclosure or nondisclosure, the agency's good faith intent to comply, and the character of past violations. *Long v. I.R.S.*, 693 F.2d 907, 909 (9th Cir. 1982) (citing *GSA v. Benson*, 415 F.2d 878, 880 (9th Cir. 1969) and *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1952)); *see, e.g.*, *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, No. CIVS-06-2845 LKK/JFM, 2008 WL 2523819 (E.D. Cal. June 20, 2008).

In sum, we have jurisdiction to review the summary judgment order, but dismiss USCIS's challenge to the scope of the permanent injunction for lack of jurisdiction. Nonetheless, because we reverse and remand the summary judgment order, we must vacate the current injunction.

## III

In a FOIA case, instead of determining whether a genuine issue of material fact exists, we employ a special two-step standard to review the grant of summary judgment. *See Ctr. for Biological Diversity v. U.S. Dep't of Agric.*, 626 F.3d 1113, 1116 (9th Cir. 2010). First, we ask whether an adequate factual basis supports the district court's ruling de novo. *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1149 (9th Cir. 2008). Second, "[i]f we determine that an adequate factual basis exists to support the district court's decision, we review the district court's conclusions under either the clearly erroneous or de novo standard of review, depending on whether the district court's conclusions are primarily factual or legal." *Id.*

The district court's determination whether a party has standing, and whether there is subject matter jurisdiction, is reviewed de novo. *See San Luis & Delta-Mendota Water Auth. v. United States*, 672 F.3d 676, 699 (9th Cir. 2012); *Schnabel v. Lui*, 302 F.3d 1023, 1029 (9th Cir. 2002). The district court's factual findings on jurisdictional issues are reviewed for clear error. *See Schnabel*, 302 F.3d at 1029.

## IV

Reviewing the summary judgment order, we hold (1) that the jurisdictional rule announced in *Kokkonen v. Guardian*

*Life Ins. Co.*, 511 U.S. 375 (1994), applies retroactively to the 1992 Settlement Agreement; and (2) that while the district court may assert supplemental jurisdiction over the Settlement Agreement claims, Plaintiffs have failed to show an "unequivocally expressed" waiver of sovereign immunity.[6] As such, we must reverse the summary judgment order as to Claims One and Two. While we recognize the harsh consequence, especially considering the parties relied on Ninth Circuit case law as it stood in 1992, "we simply cannot waive sovereign immunity where Congress has not." *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 935 (9th Cir. 2009); *United States ex rel. Haight v. Catholic Healthcare W.*, 602 F.3d 949, 953 (9th Cir. 2010) (a rule given strict retroactive effect by the Supreme Court must be applied to all cases "no matter how inequitable the result").

## A

Under the Supreme Court's decision in *Kokkonen*, a district court does not have the inherent power to enforce the terms of a settlement agreement under the doctrine of ancillary jurisdiction. *Kokkonen*, 511 U.S. at 381–82. If a district court wishes to retain jurisdiction to later enforce the terms of a settlement agreement, the order dismissing a case with prejudice must incorporate the terms of the settlement agreement or expressly retain jurisdiction. *Id.* at 380–81.

---

[6] USCIS acknowledges that it did not raise this jurisdictional issue before the district court. However, failure to challenge the district court's jurisdiction below does not ordinarily constitute waiver. *See Attorneys Trust v. Videotape Computer Prods., Inc.*, 93 F.3d 593, 594–95 (9th Cir. 1996). A jurisdictional issue may be raised for the first time on appeal regardless of its "constitutional magnitude." *Clinton v. City of New York*, 524 U.S. 417, 428 (1998).

Here, the parties do not dispute that the district court's 1992 order did neither.

Instead, Plaintiffs argue that *Kokkonen*, decided in 1994, should not be applied retroactively to the Settlement Agreement, filed in 1992. Plaintiffs cite *Chevron Oil v. Huson*, 404 U.S. 97 (1971), for the proposition that whether a Supreme Court decision applies retroactively depends on a three-prong test.[7] Plaintiffs misunderstand the law.

When the Supreme Court announces a new rule and retroactively applies it to the case before it, all courts must apply the rule retroactively. *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 90 (1993); *Catholic Healthcare W.*, 602 F.3d at 953; *Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086, 1089 (9th Cir. 2007); *see also* Christopher A. Goelz et al., *Ninth Circuit Civil Appellate Practice* ¶8:815 (The Rutter Group 2015). Silence on the issue indicates that the decision is to be given retroactive effect. *Harper*, 509 U.S. at 97–98; *Gonzales v. U.S. Dep't of Homeland Sec.*, 659 F.3d 930, 938–39 (9th Cir. 2011). Otherwise, the retroactivity depends on the three-prong test from *Huson*.

Furthermore, where a Supreme Court decision affects our jurisdiction to hear certain claims, the jurisdictional ruling has retroactive effect. *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379 (1981); *Austin v. City & Cty. of Honolulu*,

---

[7] The three-prong test considers: (1) the history of the decision in question—i.e., whether it overrules past precedent or decides an issue of first impression; (2) whether retroactivity would advance or hinder the new rule's application; and (3) the extent of any inequity that would result from retroactive application. *Huson*, 404 U.S. at 106–07; *Holt v. Shalala*, 35 F.3d 376, 380 (9th Cir. 1994).

840 F.2d 678, 682 (9th Cir. 1988) (jurisdictional rulings "may never be made prospective only"); *see Catholic Healthcare W.*, 602 F.3d at 953. Here, the Supreme Court's rule announced in *Kokkonen*—that a district court does not have the inherent power to enforce the terms of a settlement agreement under the doctrine of ancillary jurisdiction— explicitly deals with the jurisdiction of federal courts. Moreover, the *Kokkonen* court applied this new jurisdictional rule to the parties before it. Therefore, we hold the *Kokkonen* rule applies retroactively to the 1992 Settlement Agreement.

## B

Next, Plaintiffs contend that, even if *Kokkonen* applies, the district court may assert supplemental jurisdiction under 28 U.S.C. § 1367 over two contract claims because they are part of a common nucleus of operative fact related to seven other federal claims.[8] Unlike *Kokkonen*, where the parties

---

[8] Plaintiffs make three additional creative but unpersuasive arguments. First, Plaintiffs argue that the district court had subject matter jurisdiction under 28 U.S.C. § 1331 to review the Settlement Agreement because the Agreement was part of "separate guidance" adopted by USCIS under a federal regulation. *See* Freedom of Information Act and Privacy Act Procedures, 68 Fed. Reg. 4056-01 (Jan. 27, 2003). To find jurisdiction on this ground, we would have to make two inferential leaps. First, we would have to accept that the federal regulation cited by Plaintiffs referencing "separate guidance" adopted by the Department of Homeland Security ("DHS") includes the 1992 Settlement Agreement. Then, we would have to infer that since the federal regulation incorporates the 1992 Settlement Agreement, it arises under the FOIA statute. Besides Plaintiffs' assertion that the Settlement Agreement is "separate guidance" adopted by USCIS, there is no evidence or case law presented that DHS's reference to "separate guidance" intended to include all settlement agreements the agency entered into with private parties. The connection is too attenuated to serve as a basis for jurisdiction.

asserted diversity jurisdiction to get into federal court, here the jurisdictional basis is primarily a federal question under the FOIA statute.   This is persuasive, but the federal government is not your typical defendant—a party also needs permission from Congress to sue the government.

Although some Ninth Circuit cases have conflated the two, sovereign immunity and subject matter jurisdiction present distinct issues.  *See Park Place Assocs., Ltd.*, 563 F.3d at 923 (citing cases conflating the two issues); *Arford v. United States*, 934 F.2d 229, 231 (9th Cir. 1991); *see also* Ralph C. Nash & John Cibinic, *Specific Relief v. Money Damages: Subcontractors Caught in the Web of Sovereign Immunity*, in 13 No. 5 Nash & Cibinic Rep.  ¶ 25 (1999).  A waiver of sovereign immunity means the United States is amenable to suit in a court properly possessing

---

Second, Plaintiffs point out that the Settlement Agreement and the parties contemplated that the district court would enforce the terms of the Agreement.  However, unlike personal jurisdiction, "no action of the parties can confer subject-matter jurisdiction upon a federal court."  *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982); *see also Janakes v. U.S. Postal Serv.*, 768 F.2d 1091, 1095 (9th Cir. 1985) ("[P]arties cannot by stipulation or waiver grant or deny federal subject matter jurisdiction.").

Third, Plaintiffs contend that the district court could enforce the Settlement Agreement because it had an independent basis for federal jurisdiction.  *See Kokkonen*, 511 U.S. at 382.  That jurisdiction is based on Plaintiffs' claim that USCIS's "Track 3" policy violated the FOIA statute and the Due Process clause.  Assuming arguendo that Plaintiffs are correct about Track 3, FOIA and the Due Process clause would provide subject matter jurisdiction to the district court to review USCIS's Track 3 policy–not the Settlement Agreement.  Thus, Plaintiffs' suggestion that enforcing the Settlement Agreement cures the alleged due process violation does not overcome *Kokkonen* and provide federal jurisdiction over the Settlement Agreement.

jurisdiction; it does not guarantee a forum. *See Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1016 (9th Cir. 2007) ("To confer subject matter jurisdiction in an action against a sovereign, in addition to a waiver of sovereign immunity, there must be statutory authority vesting a district court with subject matter jurisdiction.").

Conversely, if the district court here wished to avail itself of 28 U.S.C. § 1367, it would need a congressional waiver of sovereign immunity to enforce the 1992 Agreement against the federal government.[9]  *See Park Place Assocs., Ltd.*, 563 F.3d at 924; *see also Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255 (1999).  The issue then becomes what Congress contemplated by inserting its waiver provision in FOIA and whether that waiver can include a contract entered into between a private party and a federal agency related to FOIA litigation.

We begin our inquiry with the Supreme Court's instruction that "a waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign." *Blue Fox, Inc.*, 525 U.S. at 261 (citing *Lane v.*

---

[9] USCIS's invocation of the Tucker Act is a red herring.  The Tucker Act does not apply to contract claims primarily seeking injunctive relief. *See United States v. Mitchell*, 463 U.S. 206, 216–17 (1983). Plaintiffs themselves concede the Settlement Agreement primarily contemplates injunctive relief. The Tucker Act, 28 U.S.C. § 1491, grants subject matter jurisdiction to the Court of Federal Claims.  This jurisdictional grant is limited to *monetary claims* based on contracts with the United States and *money-mandating* constitutional provisions, statutes, regulations, or executive orders. *Id.* at 215–18.  "FOIA claims are not within the subject matter jurisdiction of the Court of Federal Claims because FOIA does not mandate money damages." *Clark v. United States*, 116 F. App'x 278, 279 (Fed. Cir. 2004) (referencing 5 U.S.C. § 552(a)(4)(B)).

*Peña*, 518 U.S. 187, 192 (1996), and *Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986)).  The Supreme Court has frequently cautioned against finding implied waivers of sovereign immunity.  *Id.*

Plaintiffs have the burden of meeting this high standard—such a waiver must be "unequivocally expressed" in the statutory text.  *Id.*  FOIA's waiver of immunity and jurisdictional grant provides that district courts have "jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  *See* 5 U.S.C. § 552(a)(4)(B).

Beginning with the plain language in § 552(a)(4)(B), "to enjoin" is defined as "[t]o legally prohibit or restrain by injunction.  To prescribe, mandate, or strongly encourage." *Enjoin,* Black's Law Dictionary (10th ed. 2014).  The plain language clearly contemplates declaratory and injunctive relief, which is what Plaintiffs seek.  However, Plaintiffs' cause of action (a contract claim) is not "unequivocally expressed" in the statute.  Mayock is not seeking to enforce the statutory mandate to provide timely FOIA disclosures itself, rather he seeks enforcement of his own private agreement with a federal agency related to FOIA requests. As mentioned above, *supra* note 8, aside from a citation to a federal regulation that may or may not apply, Mayock provides no support for this argument.  Furthermore, a review of the legislative history of § 552(a)(4)(B) does not support a finding that an agency settlement agreement related to FOIA disclosures was contemplated by Congress as an

"improper" withholding.[10]  Strictly construing the waiver of immunity in favor of the sovereign, we find no waiver of sovereign immunity to enforce the terms of the Settlement Agreement under a theory of supplemental jurisdiction. *Blue Fox, Inc.*, 525 U.S. at 261.

In sum, because *Kokkonen* applies retroactively and the 1992 district court order did not retain jurisdiction over the prior lawsuit's Settlement Agreement, the district court does not have the inherent power to enforce the terms of the Settlement Agreement.    Even asserting supplemental jurisdiction over the contract claims, Plaintiffs' suit to enforce the contract still fails as they have not met their burden of proving an "unequivocally expressed" congressional waiver of sovereign immunity.    Therefore, we reverse summary judgment in favor of Plaintiffs as to Claims One and Two.

## V

USCIS also challenges the district court's finding that Hajro and Mayock satisfied the standing elements to bring a pattern or practice claim.  Because USCIS has not appealed the district court's finding with respect to Hajro's specific FOIA request (Claims Three, Four, and Six), we limit our review to the pattern or practice claim (Claim Five).  We hold that the factual record is not sufficiently developed to determine whether Mayock has standing to bring a pattern or

---

[10] *See* H.R. Rep. No. 92-1419, at 70–73 (1972) (discussing courts' interpretation of FOIA and amendments clarifying that courts have the authority to review *in camera* documents when an agency asserts the exemption based on national defense or foreign policy); H.R. Rep. No. 93-876, at 5–6 (1974); S. Rep. No. 93-1200 (1974); H.R. Rep. No. 104-795, at 7–11. (1996) (discussing the evolution of the Freedom of Information Act; no mention of settlement agreements).

practice claim, satisfying the personal harm and future harm prongs under our clarified standard. Mayock's single FOIA response addressed to another lawyer at his firm is insufficient to prove personal harm. Hajro, on the other hand, lost standing to bring a pattern or practice claim during the pendency of this appeal when he was granted his citizenship, because the probability that USCIS's delays "will impair [Hajro's] lawful access to information in the future" is now remote. *Payne Enters., Inc.*, 837 F.2d at 491. Therefore, we reverse and remand for further fact finding as to Mayock's standing and dismiss Hajro's claim as moot.[11]  *See Pac. Fisheries, Inc.*, 539 F.3d at 1149.

**\*\*\***

We begin our inquiry with the "irreducible constitutional minimum" elements of standing: injury in fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Neither party debates causation or redressability. The contested element here is the showing of injury in fact in the context of injunctive relief.

A plaintiff can establish injury in fact by showing that he suffered "an invasion of a legally protected interest which is

---

[11] Although some issues pertaining to Plaintiffs' standing in seeking injunctive relief may also be relevant to the merits, we do not mean to prejudge the merits of this pattern or practice claim. The standing issue—whether Hajro and Mayock have alleged an injury in fact—is separate but related to the question of whether Plaintiffs have established that USCIS has a pattern or practice of untimely responses to FOIA requests under 5 U.S.C. § 552(a)(6)(A), (B), (C). While we limit our holding to the question of standing, the district court's supplementation of the record may well overlap with the merits of any pattern or practice claim.

(a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal quotations and citations omitted). Where a party seeks injunctive relief, he must allege a sufficient likelihood that he will be subjected in the future to the allegedly illegal policy. *Lyons*, 461 U.S. at 105, 110. At the summary judgment stage, "the plaintiff can no longer rest on [] 'mere allegations' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Lujan*, 504 U.S. at 561 (internal citations omitted).

We clarify that the Article III requirements for a *specific* FOIA request claim and a *pattern or practice* claim differ from each other. We have recognized two separate claims that complainants can bring against an agency under FOIA. The first is a suit where a plaintiff attacks a specific agency action for (1) "improperly" (2) "withheld" (3) "agency records." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980). For specific FOIA request claims, after the agency produces all non-exempt documents and the court confirms the agency's proper invocation of an exemption, the specific FOIA claim is moot because the injury has been remedied. *See, e.g.*, *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982) ("[I]f we are convinced that appellees have, however belatedly, released all nonexempt material, we have no further judicial function to perform under the FOIA."); *see also Papa v. United States*, 281 F.3d 1004, 1013 & n.42 (9th Cir. 2002).

A FOIA requester may also assert a FOIA pattern or practice claim—a "claim that an agency *policy or practice* will impair the party's lawful access to information in the future." *Payne Enters., Inc.*, 837 F.2d at 491 (emphasis in original); *accord Newport Aeronautical Sales v. Dep't of the*

*Air Force*, 684 F.3d 160, 164 (D.C. Cir. 2012). For example, we have recognized a pattern or practice claim for unreasonable delay in responding to FOIA requests. *See Mayock*, 938 F.2d at 1006; *Long*, 693 F.2d at 909–10.

We now clarify, based on *Lujan* and our own precedent, that where a plaintiff alleges a pattern or practice of FOIA violations and seeks declaratory or injunctive relief, regardless of whether his specific FOIA requests have been mooted, the plaintiff has shown injury in fact if he demonstrates the three following prongs: (1) the agency's FOIA violation was not merely an isolated incident, (2) the plaintiff was personally harmed by the alleged policy, and (3) the plaintiff himself has a sufficient likelihood of future harm by the policy or practice. *See Lujan*, 504 U.S. at 563; *Lyons*, 461 U.S. at 105; *Long*, 693 F.2d at 909–10. In other words, a pattern or practice claim is not necessarily mooted by an agency's production of documents. *Payne Enters., Inc.*, 837 F.2d at 491 (holding that a pattern or practice claim is viable "[s]o long as an agency's refusal to supply information evidences a policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA, and not merely isolated mistakes by agency officials").

These three requirements are not novel, but do clarify our pattern or practice jurisprudence. This standard packages our own precedent that recognizes FOIA pattern or practice claims and the availability of injunctive relief where the "alleged illegal conduct will recur," *Long*, 693 F.2d at 909, and Supreme Court precedent holding that an injury in fact "requires that the party seeking review be himself among the injured," *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972). Morever, because Plaintiffs seek injunctive relief, Plaintiffs must show a likelihood of future harm caused by the policy

or practice. *Lyons*, 461 U.S. at 105. Thus, for the purposes of clarifying the FOIA pattern or practice claim standing requirements, we divide the alleged injury in fact into three parts.

## A

Both Mayock and Hajro meet the first prong of the test for the purposes of Article III standing. Although this first prong overlaps with the merits of a pattern or practice claim, we comment only on the standing aspect here. For the purposes of our standing inquiry, we simply review whether the plaintiff asserted that the federal agency has a pattern or practice of violating FOIA and if the plaintiff has provided any type of "specific facts" beyond "mere allegations." *Lujan*, 504 U.S. at 561; *see also City of Houston v. Dep't of Housing & Urban Dev.*, 24 F.3d 1421, 1429–30 (D.C. Cir. 1994). Plaintiffs have a number of ways to prove that the agency's FOIA violation was not an isolated event. For example, a plaintiff can provide evidence that he has been subjected to a FOIA violation more than once. Or a plaintiff can provide the court with affidavits of people similarly situated to the plaintiff who were also harmed by the pattern or practice.

Here, Mayock and Hajro opted for the latter. First, both Plaintiffs expressly allege in their complaint "that Defendants have a pattern or practice of failing to comply with the time requirement" set forth in 5 U.S.C. § 552(a)(6)(A), (B), (C). To support their allegation, Plaintiffs then provided twenty-six declarations by immigration attorneys detailing USCIS's delayed FOIA responses and attached a delayed FOIA request as proof. Therefore—for the purposes of standing

and without opining on the merits—both Plaintiffs have met this prong.

Next, we consider each Plaintiff individually to determine whether they meet the remaining elements of the test.

## B

## 1

Under prong two, Mayock must demonstrate he was personally harmed by the alleged pattern or practice. *See Lujan*, 504 U.S. at 563; *Payne Enters., Inc.*, 837 F.2d at 491. USCIS attacks Mayock's standing, arguing he was not personally harmed because Mayock, as an attorney, is not a requester under FOIA. Additionally, USCIS argues that Mayock must meet the third party standing requirements, which he cannot establish because he is suing on behalf of prospective clients. We find both arguments unavailing.

First, a practicing immigration attorney who files and signs FOIA requests is a requester under FOIA. USCIS's own FOIA request form (Form G-639) lists the attorney as the "requestor" of information.[12] We have previously accorded Mayock "requestor" status in his capacity as an attorney to bring a pattern or practice claim. *See Mayock*,

---

[12] *See* U.S. Citizenship and Immigration Services, *G-639, Freedom of Information Act/Privacy Act Request*, http://www.uscis.gov/g-639 (last visited December 15, 2015).

938 F.2d at 1007 n.1.**[13]** FOIA's text and legislative intent also support our categorization of Mayock as a requester. The statute's very first section begins with "[e]ach agency shall make available *to the public* information as follows . . . ." 5 U.S.C. § 552(a) (emphasis added). The statute further states that if an agency's requesting procedures are followed, the agency "shall make the records promptly available to *any person*." 5 U.S.C. § 552(a)(3)(A) (emphasis added). Based on this broad statutory language, courts have held that whoever is named on a FOIA request is generally a requester. *See, e.g.*, *McDonnell v. United States*, 4 F.3d 1227, 1236 (3d Cir. 1993). Here, Mayock produced one FOIA response addressed to an attorney at his firm, rather than the client who was the subject of the request. This shows that attorneys can be requesters under FOIA. *See also Unigard Ins. Co. v. Dep't of Treasury*, 997 F. Supp. 1339, 1342 (S.D. Cal. 1997) (holding attorney named on FOIA request had standing but client did not because client's name was not on the request). Thus, if Mayock can show that he personally filed and signed a request, he is a requester for the purposes of FOIA.

Next, USCIS argues that Mayock cannot establish standing because he is suing on behalf of prospective clients, citing to *Kowalski v. Tesmer*, 543 U.S. 125, 134 (2004). But *Kowalski* implicates third party standing, and Mayock alleges a personal injury in his capacity as a requester under FOIA.**[14]**

---

**[13]** Although we have previously accorded Mayock standing in his capacity as an attorney without comment, in light of *Lujan* and our refined standard for a pattern or practice claim, here we need more information to determine standing.

**[14]** The Supreme Court has recognized the attorney-client relationship as sufficient to confer third party standing. *See Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 623 n.3 (1989); *Dep't of Labor*

Mayock claims that as a requester, he has not received timely FOIA responses in violation of the statute. This is sufficient injury under FOIA.

To be injured under FOIA, Mayock does not need to have a personal connection to the information he is requesting. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975) ("[T]he Act clearly intended to give any member of the public as much right to disclosure as one with a special interest therein . . . ."). In the context of the Federal Election Campaign Act, the Supreme Court has held that a failure to get information is in itself a concrete injury. *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998). Even the dissenting justices in *Akins* suggested that a failure to get information is a concrete injury under statutes like FOIA, explaining "[a] person demanding provision of information that the law requires the agency to furnish—one demanding compliance with the Freedom of Information Act . . . for example—can reasonably be described as being 'aggrieved' by the agency's refusal to provide it." *See id.* at 30–31 (Scalia, J., dissenting). This is so even if the requester's injury may be shared with the public at large because "where a harm is concrete, though widely shared, the Court has found 'injury in fact.'" *Id.* at 34–35.[15]

_____

v. Triplett*, 494 U.S. 715, 720 (1990). *But see Kowalski*, 543 U.S. at 132–33 (attorneys asserting future clients' interest insufficient where the attorneys also sought "a federal court to short circuit the State's adjudication of th[e] constitutional question"). Because the facts before us do not implicate third party standing, we decline to apply that doctrine here.

[15] The dissent argues Mayock cannot establish standing because "Mayock has asserted exclusively harm to his clients." Dissent at 43. This is wrong. First, Mayock, in his own right, alleged a pattern or

Although a delayed FOIA request may serve as a basis for individual standing, at the summary judgment stage, we find genuine issues of material fact as to whether Mayock himself filed such a request. Mayock's declaration avers that the government has never produced the records within the statutory time period nor provided written notice setting forth "unusual circumstances."[16] True, USCIS's delays produce a

---

practice in the complaint. *See* FAC ¶ 66 ("*Plaintiffs* allege that Defendants have a pattern or practice of failing to comply with the time requirements . . . .") (emphasis added). The dissent misunderstands the record. Mayock is not Hajro's attorney; he is an independent plaintiff to this lawsuit alleging a harm from USCIS's pattern of delayed FOIA responses *in addition to* a harm based on the Settlement Agreement. Despite dismissing Mayock's claims based on the Settlement Agreement, we are not free to ignore Mayock's independent cause of action alleging a pattern or practice claim as the dissent suggests.

Second, if Mayock cannot establish standing for a pattern or practice claim against USCIS delays upon remand, who can? Mayock is the model plaintiff to assert a pattern or practice claim because his legal practice depends upon the recurring delayed FOIA requests—whereas immigrants, like Hajro, run the risk of mootness if they no longer have a need to file a FOIA request from USCIS after the production of documents.

Third, nowhere does the dissent acknowledge that our court has previously accorded Mayock—in his capacity as a lawyer—standing for this *exact* claim, albeit under the law as it stood twenty-four years ago.

Finally, the dissent erroneously contends that "no prayer for relief [is] reflected [in] any claim due to injury to Mayock separately as an attorney." Yet, Mayock seeks timely FOIA requests as a requester under FOIA.

[16] "In my practice I have sometimes filed requests under the [FOIA] to obtain the alien registration files for my clients who have a previous record with the Immigration Service. In none of these cases has the government ever produced the records I have requested within the statutory time period of twenty days nor has the government provided

concrete and particularized injury for Mayock if he can prove he is a requester.  But one FOIA response addressed to another attorney at his firm is insufficient to prove his harm was "actual or imminent."  *Lujan*, 504 U.S. at 561 ("[T]he nature and extent of facts that must be averred (at the summary judgment stage) . . . in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or foregone action) at issue.").  We need more.

The twenty-six declarations from attorneys around the country that Mayock provides as examples of delayed FOIA requests go to prong one of the standing inquiry as well as the merits of the pattern or practice claim.  They do not help Mayock establish his personal harm.  Mayock must prove that *he* was a requester subject to delayed FOIA requests at the time he filed his complaint.  *See Nat'l Sec. Counselors v. C.J.A.*, 931 F. Supp. 2d 77, 92 (D.D.C. 2013).

The district court's conclusion that Mayock had standing is understandable without the benefit of this opinion.  We also recognize that upon remand Mayock may easily satisfy this element; however, under our refined standard, where the plaintiff alleges that an agency engages in a pattern or practice of FOIA violations, he must provide sufficient evidence that he has been a victim of this pattern or practice. *See Lujan*, 504 U.S. at 561.  Before he can credibly show that he will file more delayed requests in the future under step three, he must show that he personally filed a request, and that request was delayed.  Therefore, we reverse and remand for the district court to conduct the requisite fact-finding and

written notice setting forth any 'unusual circumstances' for an extension of time beyond the statutory period of twenty days."

determine, in the first instance, whether Mayock meets prongs two and three of the pattern or practice test (e.g., whether Mayock himself submitted a FOIA request to USCIS at the time he filed this complaint; whether Mayock himself will likely file more FOIA requests with USCIS in the future).

**2**

Hajro's case under prong two is simpler. His specific FOIA request delayed by USCIS is sufficient to demonstrate that he was personally harmed by USCIS's pattern of delay in contravention of FOIA's time limits. USCIS responded to Hajro's November 2007 FOIA request almost four months later, well beyond the twenty-day limit prescribed by 5 U.S.C. § 552(a)(6)(A), and it "did not include notice of any 'unusual circumstances' justifying an extension of the statutory twenty-day time limit" per 5 U.S.C. § 552(a)(6)(B). *Hajro I*, 832 F. Supp. 2d at 1100–01. As a result, Hajro proceeded to his denial of citizenship appeal without the requested information to rebut USCIS's allegations against him. *Id.* This is sufficient to show Hajro was personally harmed by USCIS's alleged pattern or practice of FOIA violations.

**C**

The Supreme Court has held that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Lyons*, 461 U.S. at 102 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)). Because FOIA's prescribed relief is injunctive or declaratory, generally a plaintiff alleging a pattern or practice

claim under FOIA must also meet this future harm
requirement. *See* 5 U.S.C. § 552(a)(4)(B).

Because Mayock did not provide sufficient evidence of
his personal harm, we also remand to allow the district court
to determine prong three in the first instance after the
requisite fact finding.

While this case was pending before us, Hajro successfully
appealed USCIS's denial of his application for citizenship.
*Hajro v. Barrett*, No. C 10–01772 MEJ, 2011 WL 2118602
(N.D. Cal. May 27, 2011); *Hajro v. Barrett*, 849 F. Supp. 2d
945 (N.D. Cal. 2012). Thus, based on the record before us,
the likelihood that Hajro will file another FOIA request from
USCIS seeking access to his alien file is remote.[17] *See Big
Lagoon Rancheria v. California*, 789 F.3d 947, 955 (9th Cir.
2015) (en banc) ("A case is moot on appeal if no live
controversy remains at the time the court of appeals hears the
case. . . .") (citation omitted).

Seeking injunctive relief on a pattern or practice claim
requires that Hajro *himself* will likely suffer future injury
from USCIS's delayed FOIA requests or demonstrate his
injury would be capable of repetition, yet evading review.
*See Friends of the Earth, Inc. v. Laidlaw*, 528 U.S. 167, 170
(2000) (detailing when a defendant's voluntary cessation of
an allegedly wrongful behavior does not moot a case if the
behavior could reasonably be expected to recur); *Lyons*,
461 U.S. at 105; *Long*, 693 F.2d at 909. Here, Hajro's harm
was based on USCIS's delayed response in turning over his

---

[17] Plaintiffs' reference to the Controlled Application Review and
Resolution Program ("CARRP") is not part of the district court record and
cannot be a basis to support the likelihood of future harm.

alien registration file to support his application for naturalization. But with citizenship in hand, it is unlikely USCIS "will impair [Hajro's] lawful access to information in the future." *Payne Enters., Inc.*, 837 F.2d at 491. We reverse and remand as to Hajro's pattern or practice claim with instructions to dismiss his claim as moot.

## VI

In sum, we have jurisdiction to review the district court's summary judgment order under FRAP 4(a)(2), but dismiss USCIS's challenge to the permanent injunction for lack of jurisdiction. We reverse the district court's summary judgment order with respect to Claims One and Two because it lacked a waiver of sovereign immunity to enforce the terms of the 1992 Settlement Agreement. Based on the clarified pattern or practice test, we reverse and remand so that the district court can make the requisite factual findings and determine in the first instance whether Mayock has standing to bring this claim. We also reverse and remand Hajro's pattern or practice claim with instructions to dismiss the claim as moot. In light of our reversal, we vacate the permanent injunction and we also vacate and remand the attorneys' fees award for recomputation.

The parties shall bear their own costs on appeal.

**DISMISSED** in part, **REVERSED** and **REMANDED** in part with instructions.

RAWLINSON, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that we have jurisdiction to review the summary judgment order and, although it is an extremely close question, I ultimately agree that the government's premature appeal did not preserve its challenge to entry of the permanent injunction.

I also have no quarrel with the majority's conclusion that the jurisdictional rule announced in *Kokkonen v. Guardian Life Ins. Co*., 511 U.S. 375 (1994) applies retroactively to the 1992 Settlement Agreement. Because the district court did not retain jurisdiction over the Settlement Agreement or incorporate the agreement into the final judgment, the district court lacked jurisdiction to enforce the agreement under the doctrine of ancillary jurisdiction. *See id*. at 380–81. Having determined the lack of jurisdiction on that basis, I see no need to wade into the sovereign immunity issue. Finally, I agree that Mirsad Hajro lost standing to bring a pattern or practice claim once he was granted citizenship.

The only issue on which I part company with the majority is the issue of James Mayock's standing to bring a claim under the Freedom of Information Act in his own right. Mayock simply failed to allege any individual harm to him other than indirectly through harm to his clients.

We all agree that Mayock, Hajro's attorney, failed to establish standing to bring an action under the Freedom of Information Act under the operative complaint. In addition, there is no indication in this record that on remand he will be able to plausibly allege an injury in fact, one of the

"irreducible constitutional" elements of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

The Supreme Court has described the injury requirement as suffering "an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id*. (citations and internal quotations marks omitted). In addition, the party asserting an injury in fact must plausibly allege "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant . . . *Id*. (citation, alterations, and internal quotation marks omitted).

In the First Amended Complaint, the allegations focused exclusively on harm to Plaintiff Hajro and violation of the Settlement Agreement.

The First Cause of Action alleged that the multi-track policy violated the Settlement Agreement by allowing expedited processing only for cases scheduled for a hearing before an immigration judge. The First Cause of Action specifically asserted a violation of "essential due process protections for aliens."

The Second Cause of Action asserted that denial of expedited processing of Hajro's Freedom of Information Act request impaired Hajro's "substantial due process rights . . . to a fair hearing" under the immigration statutes.

The Third Cause of Action alleged that the failure to provide Hajro the requested material within 20 days violated the Freedom of Information Act and its implementing regulation.

The Fourth Cause of Action alleged a violation of the notification requirement of "the unusual circumstances which prevented the agency from processing [Hajro's] request within the 20 day statutory limit." (internal quotation marks omitted).

The Fifth Cause of Action alleged a pattern or practice of noncompliance.

The Sixth Cause of Action characterized the agency's action as arbitrary, capricious, willful and unreasonable.

The Seventh Cause of Action alleged a violation of Hajro's "due process rights because [withholding the requested documents] prevented [Hajro's] attorney from adequately preparing his brief on appeal," in violation of Hajro's "right to a fair hearing and fundamental fairness."

The Eighth Cause of Action alleged a violation of the "Fifth Amendment guarantee of Equal Protection" by use of a policy that "creates two classes of aliens."

The Ninth and final Cause of Action alleged that implementation of a new policy for processing document requests without notice and an opportunity for comment violated the Administrative Procedure Act.

The Prayer For Relief generally tracked the Causes of Action. Notably, no prayer for relief reflected any claim due to injury to Mayock separately as an attorney.

Similarly, Mayock's declaration, submitted as part of the summary judgment proceedings, focused on Freedom of Information requests made on behalf of his clients. Not one

hint of injury to Mayock or to his practice was contained in his declaration.[1]

Contrary to the majority opinion's recharacterization of his claims, Mayock has asserted exclusively harm to his clients, primarily from failure to adhere to the Settlement Agreement. Curiously, the majority opinion acknowledges that "Mayock is not seeking to enforce the statutory mandate to provide timely [Freedom of Information Act] disclosures itself . . ." *Majority Opinion*, p. 26. Rather, the majority recognizes, Mayock "seeks enforcement of *his own private agreement* with a federal agency related to [Freedom of Information Act] requests. . . ." *Id.* But the majority has concluded, and I agree, that the district court cannot enforce the Settlement Agreement. *See Majority Opinion*, pp. 21–22. If the claims Mayock seeks to enforce are unenforceable, how does he have standing?

In any event, the record in the district court does not reflect any alleged harm to Mayock other than indirectly through his clients. Speculation that Mayock may eventually establish first-party standing based on unsubstantiated harm to his ability to represent his clients is entirely contrary to the position Mayock advocated before the district court. In his opposition to the government's motion to dismiss, Mayock

---

[1] The majority espouses the view that Mayock alleged a pattern or practice claim in his own right. *See Majority Opinion*, p. 34–35 n.15. However, as noted above, no such claim is asserted in the First Amended Complaint or Mayock's declaration. The majority's reference to Paragraph 66 of the First Amended Complaint, *see id.*, is unavailing. That paragraph contains the single conclusory statement quoted by the majority, with absolutely no reference to individual injury to Mayock. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that a complaint containing only conclusory statements does not assert a plausible claim for relief).

maintained that he had standing as a party to the Settlement Agreement, "a member of the public," and "as a lawyer on behalf of his injured clients." *Opposition To Motion To Dismiss*, January 19, 2009, p. 9. Mayock further asserted that "a lawyer has standing to sue *on behalf* of his injured clients" and that he had "standing to bring a pattern and practice lawsuit alleging that Defendants routinely exceed the twenty day legal response period in [the Freedom of Information Act] *on behalf of his injured clients*." *Id.* at 10 (emphases added). Significantly, Mayock countered the government's reliance on *Gilmore v. United States Dept. of Energy*, 33 F. Supp. 2d 1184 (N.D. Cal. 1998), a case involving first-party standing, by asserting that he had third-party standing:

> Defendants are correct that Gilmore was not asserting any third party rights. He was asserting his own. However . . . the courts have allowed lawyers to assert the *third party rights of their clients* in pattern and practice cases. Therefore, the third party argument is a red herring.

*Id.* at 10–11 (emphasis added). Additionally, Mayock emphasized that:

> The Complaint states that Plaintiff Mayock has filed several [Freedom of Information Act] requests on behalf of his clients seeking copies of their alien registration files and it has taken more than twenty days for Defendants to produce the records in those cases. . . . As Plaintiff Mayock's *clients'* [Freedom of Information Act] requests are processed in an untimely manner, *they* suffer

an injury which can be redressed by an injunction. Because Plaintiff Mayock is an attorney, he has standing to seek this redress by means of a pattern and practice lawsuit.

*Id.* at 11 (emphases added). Because Mayock relied on the First Amended Complaint in asserting third-party standing to file a pattern and practice claim on behalf of his clients, it is inappropriate to suggest reinvention of his claim to establish standing on remand. *See Yamada v. Snipes*, 786 F.3d 1182, 1203–04 (9th Cir. 2015) ("As with all questions of subject matter jurisdiction except mootness, standing is determined as of the date of the filing of the complaint. . . .") (citation omitted).

Contrary to the majority's approach, Mayock's inadequate assertion of third-party standing requires dismissal of his asserted claim, and precludes any further development based on newly minted and speculative theories premised on first-party standing. *See La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010) (holding that a party "may not effectively amend its Complaint by raising a new theory of standing" at the summary judgment stage) (citation omitted). As the majority concedes, Mayock failed to present any evidence of the requisite personal harm for standing, which is unsurprising because he totally relied on third-party standing in the district court proceedings. *See Majority Opinion*, p. 36; *see also Opposition To Motion To Dismiss*, pp. 9–10. A remand for re-pleading purposes is particularly inappropriate given the majority's recognition that the articulated standing "requirements are not novel" and that "[t]his standard packages our own precedent" and that of the Supreme Court. *Majority Opinion*, p. 30. *See La Asociacion de Trabajadores*

*de Lake Forest*, 624 F.3d at 1089 (disapproving the delayed pleading of a new theory of standing).**[2]**

I would reverse the district court's ruling that Mayock had standing to pursue an action in his own right, and remand for dismissal.

In conclusion, I agree that we have jurisdiction over this appeal, that the government's premature appeal did not preserve its challenge to entry of the permanent injunction, that the district court did not retain jurisdiction to enforce the settlement agreement, and that Hajro's claims are moot. I respectfully disagree that Mayock has standing. I would reverse and remand for dismissal of all claims.

---

**[2]** The majority seeks acknowledgment that we granted Mayock standing in a FOIA case twenty-four years ago. *See Majority Opinion*, p. 35, n. 15. It is notable that the majority concedes that Mayock's claims were made in his capacity as a lawyer. *See id.* More importantly, perhaps twenty-four years ago, Mayock's complaint was adequate. Today it is not. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 556–57 (2007) (setting forth pleading standards under Rule 8); *see also Iqbal*, 556 U.S. at 678 (explaining that a complaint must assert plausible claims and not conclusory statements).