**ULICO CASUALTY COMPANY,**
**Plaintiff,**

v.

**CLOVER CAPITAL MANAGEMENT,**
**INC. Defendant.**

**No. 3:00–CV–0773.**

United States District Court,
N.D. New York.

May 11, 2001.

Proskauer Rose LLP, New York City (Myron D. Rumeld, of counsel), for Plaintiff.

Woldford & Leclair LLP, Rochester, NY (Steven E. Cole, of counsel), for Defendant.

## MEMORANDUM—DECISION & ORDER

McAVOY, District Judge.

Plaintiff Ulico Casualty Company ("Ulico") commenced the instant action against Defendant Clover Capital Management, Inc. ("Clover"), pursuant to §§ 404(a)(1)(B); 404(a)(1)(D); and 405(a)(2) of the Employee Retirement Income and Security Act ("ERISA"), 29 U.S.C. §§ 1104(a)(1)(B); 1104(a)(1)(D); and 1105(a)(2), alleging that Clover breached its fiduciary duties and alleging a common law breach of contract arising out of Clover's sale of collateralized mortgage obligation and real estate mortgage investment conduit bonds, known as Z–Bonds, held by certain pension plans. Presently

before the Court is Clover's motion for summary judgment pursuant to FED. R. CIV. P. 56 seeking dismissal of the Complaint in its entirety.

## I. BACKGROUND

The Laborers International Union of North America Local Union 35 Pension Fund, Laborers International Union of North America Local Union No. 322 Pension Fund, and Carpenters Local No. 120 Pension Plan (collectively the "Funds") are employee pension benefit plans within the meaning of 29 U.S.C. § 1002(2)(A). At all times relevant hereto, Ulico issued fiduciary liability insurance coverage policies (the "Policies") to the Funds and their trustees.

During the period of 1988 and 1995, certain individuals, whose names are not relevant hereto, were the trustees of the funds. The trustees retained W.J. Nolan & Company ("Nolan") to invest in fixed income securities on behalf of the Funds. Beginning in 1992 and continuing through 1994, Nolan purchased the aforementioned Z–Bonds for each of the funds. By the end of 1994, the Funds' portfolio of investments purchased by Nolan consisted primarily of Z–Bonds. During 1994, the market value of Z–Bonds declined significantly.

Sometime in the first quarter of 1995, the Funds retained Clover as their investment manager. Thereafter, Clover sold the Z-bonds at a substantial loss to the Funds.

The United States Department of Labor ("DOL") investigated the matter and filed lawsuits against the trustees for breaching their fiduciary duties seeking recovery of all losses to the Funds attributable to the investment in the Z–Bonds. The trustees then entered into Consent Decrees with the DOL, pursuant to which the DOL lawsuits were discontinued and the trustees agreed to make payments to the Funds totaling $3 million, plus a 20% penalty under 29 U.S.C. § 1132(1).

Ulico assumed responsibility for the defense of the DOL lawsuits, the $3 million in settlement payments, and the $600,000 penalty. In connection with these payments, Ulico and the trustees entered into a settlement agreement that provides, in relevant part, as follows:

> In consideration for the payments of the sums set forth in Paragraph 1. above and pursuant to Section VII.5 of the Policy, the Pension Fund and the Trustees hereby assign, transfer, and convey to Ulico all claims, causes of action, rights and recoveries to which they are entitled as against any culpable or potentially culpable parties who may be responsible for all or any part of the losses allegedly sustained by the Pension Fund, including, but not limited to Clover Capital Management, Inc. ("Clover") based upon, or arising from Clover's management and sale of the Z–Bonds referred to in the DOL Action, including, but not limited to, the assertion that Clover improperly and/or imprudently sold the Z–Bonds held by the Pension Fund when Clover became an investment manager for the Pension Fund, by making such sales on an overly precipitous basis, and/or at lower than prices available in the market at the time of the sale. Further, also pursuant to Section VII.5 of the Policy, the Pension Fund and the Trustees shall execute all papers required and shall do everything that may be necessary to secure any rights assigned, transferred, or conveyed to Ulico pursuant to this paragraph and the Pension Fund and the Trustees shall do nothing to prejudice any such rights of Ulico.

Settlement Agr., ¶ 5. Section VII.5 of the Policies referenced in the settlement

agreements is entitled "Subrogation and Recourse" and provides as follows:

> In the event of any claim or payment under this insurance, the Company shall be subrogated to the extent of such payment to all rights of recovery therefore, and the insureds shall execute all papers required and shall do everything that may be necessary to secure such rights including the execution of such documents necessary to enable the Company to effectively bring suit in the name of the Insureds.

Ulico commenced the instant action against Clover asserting claims on behalf of the Funds and the Trustees pursuant to ERISA for breach of its fiduciary duties and for breach of contract. Presently before the Court is Clover's motion for summary judgment pursuant to FED. R. CIV. P. 56 seeking dismissal of the Complaint in its entirety.

## II. DISCUSSION

### A. Summary Judgment Standard

In addressing Clover's motion for summary judgment, the Court will apply the familiar standards applicable to such motions, which need not be restated here. *Roman v. Cornell Univ.*, 53 F.Supp.2d 223, 232–33 (N.D.N.Y.1999); *Phipps v. New York State Dep't of Labor*, 53 F.Supp.2d 551 (N.D.N.Y.1999); *Riley v. Town of Bethlehem*, 44 F.Supp.2d 451, 458 (N.D.N.Y.1999).

### B. Contribution

■ Clover first moves to dismiss Ulico's contribution claim pursuant to 29 U.S.C. § 1105(a)(2) contending that: (1)

the DOL's lawsuits arose out of the trustees' breach of their fiduciary duties prior to 1995 (that is, before Clover had a fiduciary relationship with the Funds) and, thus, Clover could not have breached any fiduciary duty that enabled the trustees to breach their fiduciary duties as alleged in the DOL litigation; and (2) when the trustees retained Clover in 1995, pursuant to 29 U.S.C. § 1105(d)(1), they were relieved of any liability they might have incurred as a result of Clover's acts or omissions with respect to the Z–Bonds and, thus, the trustees' liability in the DOL litigation could not have related to any acts taken by Clover. Ulico responds that Clover's actions with respect to the sale of the Z–Bonds are directly related to the DOL litigation because but for the time and manner in which Clover sold the Z–Bonds the Funds would not have realized such substantial loss.

Clover bases its argument on the language of 29 U.S.C. § 1105(a), which provides as follows:

**(a) Circumstances giving rise to liability**

In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances . . .

(2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach.[1]

---

1. Section 1104(a)(1) referenced in § 1105(a)(2) provides as follows:
(a) Prudent man standard of care
(1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
 (A) for the exclusive purpose of:

It seems unlikely that Clover "enabled [the trustees] ... to commit a breach." 29 U.S.C. § 1105(a). The breaches alleged in the DOL litigation (the investment and reinvestment in Z–Bonds) pertain to the acts of the trustees prior to Clover's entry into the fiduciary relationship with the Funds and the trustees. The DOL Complaint alleges that the trustees: (1) failed to conduct a careful, independent investigation and evaluation of the merits of the investments in Z–Bonds; (2) purchased the Z–Bonds without sufficient understanding of those bonds, without having reviewed prospectuses for those bonds, and without inquiring into the behavior of those bonds under various interest rate scenarios; (3) permitted the automatic reinvestment of earnings from the Nolan portfolio into the Z–Bonds without the trustees' prior review or approval; (4) failed to give appropriate consideration to the role the Z–Bonds played in the overall funding objectives and liquidity needs of the Fund, how the Z–Bonds would serve to further the purposes of the Fund, the risk to the Fund of loss associated with the investment in the Z–Bonds, and the composition of the Fund with respect to diversification prior to investing in the Z–BOnds; (5) failed to appoint an investment manager to manage the Nolan portfolio; (6) failed to consult with investment advisors or professionals concerning the purchase of Z–Bonds prior to making those investments; and (7) failed to adequately monitor the Nolan portfolio account activi-

ty. Clover Exs. 7, 8, 9. Although the Complaint in the DOL litigation states that "[i]n and around 1995 the Defendant Trustees sold specific Z–Bonds which had declined significantly in value at a loss to the fund," Clover Exs. 7 at ¶ 15, 8 at ¶ 15, 9 at ¶ 16, it does not allege that the sale failed to comply with the prudent man standard of care set forth at § 1104(a)(1). *See* Clover Ex. 7 and 8 at ¶ 15 ("By the conduct set forth in paragraphs 8 through 13 above, the Defendant Trustees failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B)."), Ex. 9 at ¶¶ 14, 15 (same). Thus, with respect to the initial investment and reinvestment in the Z–Bonds, the trustees alone, and not Clover, are to blame. Nothing Clover did enabled the trustees to commit those breaches. In fact, Clover did not come into the picture until after the fact.

This, however, is not the relevant inquiry. Under its plain meaning, § 1105(a) describes those instances where one fiduciary (which, here, is Clover) may be held liable for the acts of another fiduciary (the trustees). 29 U.S.C. § 1105(a) ("[A] fiduciary shall be held liable for a breach of a fiduciary responsibility of *another* fiduciary."); *Hamilton v. Carell*, 243 F.3d 992,

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

1000 (6th Cir.2001); *Salovaara v. Eckert,* 222 F.3d 19, 31 (2d Cir.2000). Section 1105(a) is another part of ERISA's overall scheme to make pension plans whole in the event of a breach of a fiduciary duty. *Chemung Canal Trust Co. v. Sovran Bank,* 939 F.2d 12, 15 (2d Cir.1991). Section 1105(a) does not speak to the equities among co-fiduciaries who may have been found to have violated their obligations under ERISA. *Id.* This latter concern developed as a matter of federal common law. *Id.* at 16.

There is little doubt that, in this Circuit, a breaching fiduciary is entitled to the protections of contribution.[2] *Chemung Canal,* 939 F.2d 12. Here, the trustees were alleged by the DOL to have breached certain fiduciary obligations in connection with their investment and reinvestment in the Z–Bonds on behalf of the Funds. As discussed, those decisions were the responsibility of the trustees; not Clover. The extent of any loss occasioned by these poor investments, however, was controlled to a certain extent by the manner in which the Z–Bonds were disposed of by Clover. If, in fact, Clover breached its fiduciary obligations to the Funds regarding the manner in which it sold the Z–Bonds thereby increasing the amount of harm to the funds occasioned by the trustees' initial breach in investing in the Z–Bonds, then the trustees may be entitled to contribution from Clover for that portion of the harm attributable to its actions. In this respect, Clover and the trustees may be joint tortfeasors and Ulico may seek contribution from Clover for any damages caused by its alleged breaches.[3] Restatement (Second) of Trusts § 258; *In re: Masters Mates & Pilots Pension Plan and IRAP Litigation,* 957 F.2d 1020, 1026–28 (2d Cir.1992); *Chemung Canal,* 939 F.2d 12.

For these reasons, Clover's motion for summary judgment on this issue is denied.

## C. Whether Ulico is Contractually Authorized to Seek Contribution on Behalf of the Trustees

■ Clover next argues that the trustees and the Funds only granted Ulico a right of subrogation; not the right to pursue ERISA claims on their behalf against Clover. Ulico disagrees contending that it already had subrogation rights under the Policy and the intent of the settlement agreement was to permit it to pursue ERISA claims against Clover.

■ This issue is but a disagreement over contract interpretation. "The primary objective in contract interpretation is to give effect to the intent of the contracting parties as revealed by the language they chose to use. In a contract dispute a motion for summary judgment may be granted only where the agreement's language is unambiguous and conveys a definite meaning. If the language is susceptible to different reasonable interpretations, and where there is relevant extrinsic evidence of the parties' actual intent, then the contract's meaning becomes an issue of fact precluding summary judgment." *Say-*

---

**2.** Ulico's Third Cause of Action seeks to hold Clover liable under § 1105(a)(2). That Cause of Action also seeks to recover "contribution for all losses incurred in connection with the settlement of the DOL lawsuits." In the moving and opposition papers, the parties raise the issue of contribution. Based upon the fact that the parties have raised this issue and reading the Complaint liberally, the Court finds that contribution is at issue here.

**3.** The trustees assigned to Ulico their rights against Clover.

*ers v. Rochester Tel. Corp. Supplemental Management Pension Plan,* 7 F.3d 1091, 1094 (2d Cir.1993) (internal citations and quotations omitted).

 "Ascertaining whether or not a writing is ambiguous is a question of law for the trial court." *Id.* "Contract language is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business. No ambiguity exists when contract language has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." *Id.* (internal citations, quotations, and alterations omitted). In interpreting the terms of a contract, the Court must consider the entirety of the agreement, including any references therein, and "safeguard against adopting an interpretation that would render any individual provision superfluous." *Id.*

Clover's argument rests on the fact that the assignment of claims in the settlement agreement is made "pursuant to Section VII.5 of the Policy."[4] This phrase, however, does not limit the rights transferred to Ulico, but merely incorporates the rights it has under the Policy and the trustees' and the Funds' obligations under the Policy. As Ulico argues, under section VII.5 of the Policy, it already is subrogated to the extent of any payments made under the policy. Thus, Clover's interpretation would render the terms of the settlement agree-

ment superfluous and meaningless, a result to be avoided.

Moreover, reading the agreement in its entirety, the Court does not find the provision at issue to be reasonably susceptible to differing interpretations. Paragraph 5 of the settlement agreement constitutes a clear assignment of "all claims, causes of action, rights and recoveries" the Trustees and the Funds have against any potentially responsible persons and specifically includes claims that the trustees or the Funds may have against Clover based on its sale of the Z–Bonds referred to in the DOL litigation.

For these reasons, the Court rejects Clover's argument that Ulico is limited to its rights as subrogee and denies its motion for summary judgment on this ground.

### D. Preemption

 Finally, Clover argues that Ulico's state law breach of contract claim is preempted by ERISA. Ulico responds that, because Clover has contested its fiduciary status in its Answer to the Complaint, a question of fact remains whether Clover is a fiduciary subject to ERISA claims or whether Clover is a non-fiduciary against whom a state law contract claim may be brought.

In its Reply Memorandum of Law, Clover concedes that it is an ERISA fiduciary. Reply Mem. of Law, pp. 5–6. Upon reviewing Ulico's Fourth Cause of Action (Breach of Contract), it is clear that it is "[a] state common law action which merely amounts to an alternative theory of recovery for conduct actionable under ERISA" and, therefore, is preempted. *Diduck v.*

---

4. The relevant portions of the settlement agreement and the insurance policies have been set forth above and will not be reprinted here.

*Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 288 (2d Cir.1992); 29 U.S.C. § 1144(a).

## III. CONCLUSION

For the foregoing reasons, Clover's motion for summary judgment is GRANTED IN PART and DENIED IN PART. Ulico's Fourth Cause of Action is DISMISSED. In all other respects, Clover's motion for summary judgment is DENIED.

**IT IS SO ORDERED.**