Jennifer M. SMITH, Plaintiff,.

v.

**U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, Defendant.**

Civil Action No. 16–cv–2137–WJM–KLM

United States District Court,
D. Colorado.

Signed 04/05/2017

Mark Silverstein, Sara R. Neel, Daniel James Culhane, Daniel J. Culhane, LLC, Denver, CO, for Plaintiff.

David Z. Moskowitz, Ian J. Kellogg, U.S. Attorney's Office, Denver, CO, for Defendant.

## ORDER DENYING MOTION TO DISMISS

William J. Martínez, United States District Judge

In this action, Plaintiff Jennifer M. Smith ("Smith") seeks to enjoin U.S. Immigration and Customs Enforcement ("ICE") from continuing its self-described practice of denying requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, if those requests might assist a fugitive alien. (*See* ECF No. 32.) Currently before the Court is ICE's Mo-

tion to Dismiss [the] First Amended Complaint for Lack of Subject Matter Jurisdiction. (ECF No. 35.) For the reasons explained below, this motion is denied.

## I. BACKGROUND

Smith's currently operative complaint is her First Amended Complaint (ECF No. 32). However, an understanding of Smith's Original Complaint (ECF No. 1) is necessary to evaluating the more-recent allegations and the current state of the case. The Court also draws certain facts from a declaration Smith submitted in support of an earlier filing (ECF No. 19–1; *see also* ECF No. 40 at 6 n.1). *Cf. Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) (court may accept materials outside the pleadings when resolving a challenge to subject matter jurisdiction).

Smith is an immigration attorney who represents a noncitizen client named Marta Alicia del Carmen Orellana Sanchez ("Ms. Sanchez"). (ECF No. 1 ¶ 8.) In May 2013, Smith submitted a FOIA request to United States Citizenship and Immigration Services ("CIS") for Ms. Sanchez's "Complete Alien File (A–File)" and various other records relating to any arrivals in or departures from the United States made by Ms. Sanchez since 2005. (*Id.* ¶¶ 11–12.) CIS notified Smith in August 2013 that it had located "18 . . . potentially responsive agency documents that may have originated from ICE." (*Id.* ¶ 14.) CIS further stated "that it 'referred' the 18 documents and a copy of Ms. Smith's FOIA request to ICE for consideration and a response." (*Id.*)

More than two years later—in September 2015—ICE responded to Smith and declined to produce any records, explaining that Ms. Sanchez is deemed "a fugitive under the Immigration and Nationality Act," and "[i]t is ICE's practice to deny fugitive alien FOIA requester's access to the FOIA process when the records requested could assist the alien in continuing to evade immigration enforcement efforts." (*Id.* ¶ 16.) The Court will refer to this as the "Fugitive Practice."

By November 2015, Smith had exhausted her agency appellate remedies. (*Id.* ¶ 20.) Smith filed this lawsuit on August 24, 2016, arguing that FOIA contains no exception that would justify the Fugitive Practice. (*Id.* ¶ 17.) Smith originally sought two forms of relief: (1) disclosure of Ms. Sanchez's records, and (2) an injunction forbidding ICE from continuing the Fugitive Practice. (*See id.* at 7.)

On September 27, 2016—a little over a month after Smith filed this lawsuit—ICE released Ms. Sanchez's file to Smith's litigation counsel. (ECF No. 13 ¶ 3; ECF No. 19–1 ¶ 9.) "No explanation was provided for the government's decision to provide the documents it had previously withheld, nor was there any mention of the government's practice under which it withheld the documents in the first place." (*Id.*) On that same day, however, ICE invoked the Fugitive Practice to deny a FOIA request Smith made related to a different client. (ECF No. 19–2.)

These events prompted Smith to file her First Amended Complaint, which acknowledges that her claim specifically for Ms. Sanchez's records is now moot. (ECF No. 32 ¶ 4.) Smith emphasizes, however, that she continues to seek an injunction against the Fugitive Practice. The First Amended Complaint contains the following principal allegations in support of a subsisting claim for injunctive relief:

- "Ms. Smith has made (and in the future will continue to make) FOIA requests on a regular basis to various agencies of the Department of Homeland Security. . . ."

- "...in July 2015, another of Ms. Smith's FOIA requests was also denied by ICE based on the challenged practice. Ms. Smith appealed that denial, and on July 31, 2015, ICE denied the appeal, affirming the practice challenged in this case."

- "Because Ms. Smith regularly submits FOIA requests to the government that are related to non-citizen clients who may be deemed 'fugitives' by ICE, and because she plans to continue to do so in the future, the government's illegal practice subjects Ms. Smith to substantial likelihood of ongoing and/or future injury, both by depriving Ms. Smith of her rights under FOIA and by impairing Ms. Smith's ability to fully and effectively represent her clients."

(*Id.* ¶¶ 31, 32, 35.) Smith did not amend her complaint to include the most recent FOIA denial (on September 27, 2016), nor has she made the Court aware of any separate lawsuit related to that denial. Smith has also not made the Court aware whether she filed a lawsuit related to the July 2015 denial.

ICE now moves to dismiss, claiming that Smith lacks Article III standing to seek an injunction against future applications of the Fugitive Practice because Smith has allegedly failed to show that such applications are "imminent."

## II. LEGAL STANDARD

 Article III, section 2, of the United State Constitution restricts federal court jurisdiction to "Cases" and "Controversies." The "irreducible constitutional minimum" of a properly presented case or controversy is as follows:

First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of.... Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations omitted; alterations in original). "[E]ach [of these three] element[s] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561, 112 S.Ct. 2130. Thus, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* (internal quotation marks omitted). By the summary judgment phase, however, "the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts." *Id.* (internal quotation marks omitted); *see also id.* at 566, 112 S.Ct. 2130 ("Standing...requires, at the summary judgment stage, a factual showing of a perceptible harm.").

## III. ANALYSIS

 Although ICE has now produced the records specific to Ms. Sanchez, it is important to note that the present dispute is not currently a question of whether ICE has mooted Smith's claim through "voluntary cessation." *See generally* 13C Charles Alan Wright et al., *Federal Practice & Procedure* §§ 3533.5, 3533.7 (3d ed., Jan. 2017 update) ("*Wright & Miller* "). Even where a defendant's voluntarily cessation of an allegedly unlawful practice fails to moot the case, an antecedent standing question may remain. Specifically, it may

be that the plaintiff never had standing— even before the voluntary cessation—to seek an injunction against feared future instances of the allegedly unlawful practice. For example, in *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), the Los Angeles Police Department had declared a "moratorium" on a chokehold practice that the plaintiff attacked as unconstitutional, but the Supreme Court found that "the case [was] not moot, since the moratorium by its terms [was] not permanent." *Id.* at 101, 103 S.Ct. 1660. The Court "nevertheless" went on to find that the plaintiff lacked standing to seek an injunction against any further use of the chokehold. *Id.* at 101–10, 103 S.Ct. 1660. Similarly, ICE argues in this case that Smith never had standing, even before ICE's decision to release Ms. Sanchez's file, to challenge the Fugitive Practice.[1]

Turning now to the parties' arguments, ICE insists that Smith's predicted future injury is too indefinite to establish the "imminent" injury required for Article III standing. (ECF No. 35 at 7–8.) Notably, however, this challenge does not necessarily present the Court with the question of whether FOIA provides a cause of action specifically for a "pattern or practice" of FOIA violations (also sometimes called a "policy or practice" claim). At least two Courts of Appeal have authorized such a claim. *See Payne Enters., Inc. v. United States*, 837 F.2d 486, 490–94 (D.C. Cir. 1988) (authorizing pattern-or-practice FOIA claim); *Long v. IRS*, 693 F.2d 907,

909 (9th Cir. 1982) (same). The Tenth Circuit has yet to make a precedential decision on this question. *Cf. Liverman v. OIG*, 139 Fed.Appx. 942, 944–45 (10th Cir. 2005) (acknowledging a FOIA plaintiff's argument for a pattern-or-practice claim, and, without ruling on whether such a claim exists, finding the record insufficient to support it). Even if such a cause of action exists, it cannot establish standing requirements that drop below those of Article III.

■ That said, "'imminence' is concededly a somewhat elastic concept," *Lujan*, 504 U.S. at 564 n.2, 112 S.Ct. 2130, and the Supreme Court's various discussions of it make clear that the degree of imminence necessary may vary based on the type of claim. In one fairly recent decision, for example, the Court announced that "imminent" means "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 133 S.Ct. 1138, 1147–48, 185 L.Ed.2d 264 (2013). But *Clapper* was a case about the Government's interception of telephone calls for intelligence-gathering purposes, and the Supreme Court was transparently motivated by that context. *See id.* at 1147 ("we have often found a lack of standing in cases in which the Judiciary has been requested to review actions of the political branches in the fields of intelligence gathering and foreign affairs"); *see also id.* at 1149 n.4 (rejecting a proposed approach to overcoming standing problems because it could implicitly reveal the contents of intelligence files). *Clapper* itself acknowledged that prior Supreme Court cases "do not uniformly re-

---

1. The Court is not convinced that voluntary cessation principles could never be relevant here. *See, e.g.*, 13C *Wright & Miller* § 3533.7 nn.26 & 28 (collecting cases regarding a government's choice to abandon an official action without disavowing its legality). On the other hand, "[i]f the plaintiff lacks standing at the time the action commences, the prospect that the dispute may be repeated does not

resurrect standing." *Id.* § 3533.8. ICE focuses entirely on the latter argument, and expressly declares that "[t]he voluntary cessation doctrine is irrelevant to, and not a basis for, [its] motion." (ECF No. 41 at 9.) Given this, and because the Court finds that ICE's "imminence" argument fails, the Court need not reach the voluntary cessation question.

quire plaintiffs to demonstrate that it is literally certain that the harms they identify will come about. In some instances, we have found standing based on a 'substantial risk' that the harm will occur . . . ." *Id.* at 1150 n.5.

Indeed, a year after *Clapper*, the Supreme Court cited this portion of *Clapper* to announce that "[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending' or there is a ' "substantial risk" that the harm will occur.' " *Susan B. Anthony List v. Driehaus*, —— U.S. ——, 134 S.Ct. 2334, 2341, 189 L.Ed.2d 246 (2014) ("*SBA*"). *SBA* is a good example of the looser "imminence" requirement applied when the plaintiff faces a "credible threat of prosecution" for a crime or administrative violation. *Id.* at 2342 (internal quotation marks omitted). The plaintiffs in *SBA* challenged an administrative penalty proceeding regarding allegedly false "electoral speech" and established a credible threat of prosecution through "a history of past enforcement," the fact that the feared proceedings "are not a rare occurrence," the fact that the administrative agency failed to "disavow[ ] enforcement" as to the plaintiffs, and the fact that criminal prosecution could follow the administrative proceeding. *Id.* at 2345–46.

■ Then, of course, there are the environmental standing cases. To the extent the plaintiffs do not live in the area affected by an agency's decision or proposed decision, "imminence" generally means that the plaintiffs must have "concrete plans" to visit the affected habitat. *Lujan*, 504 U.S. at 564, 112 S.Ct. 2130; *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 493–97, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009) (lack of standing to challenge a policy with respect to National Forests because plaintiffs did not have concrete plans to visit any portion of the National Forests affected by that policy).

Unfortunately, the foregoing only demonstrates that "imminence" means different things in different contexts. It does not directly inform what "imminence" means in the FOIA context—a subject the Supreme Court has apparently never addressed. The Court therefore turns to lower-court decisions on the subject. Before doing so, however, the Court notes that all of these decisions struggle to a greater or lesser degree with the Supreme Court's declaration that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Rather, past exposure is "evidence bearing on whether there is a real and immediate threat of repeated injury." *Id.* at 496, 94 S.Ct. 669.

As noted, the Ninth and D.C. Circuits have formally recognized a FOIA pattern-or-practice claim. In the Ninth Circuit, however, the standing analysis has not been substantially developed. The Ninth Circuit's most recent pronouncement requires the plaintiff to "demonstrate[ ] the three following prongs: (1) the agency's FOIA violation was not merely an isolated incident, (2) the plaintiff was personally harmed by the alleged policy, and (3) the plaintiff himself has a sufficient likelihood of future harm by the policy or practice." *Hajro v. U.S. Citizenship & Immigration Servs.*, 811 F.3d 1086, 1103 (9th Cir. 2016). But, as to the third prong, the court offers little guidance other than to repeat that past exposure to illegal conduct does not, in itself, show a present case or controversy. *See id.* at 1107.

The case law in the D.C. Circuit and the U.S. District Court for the District of the District of Columbia is much more devel-

oped, which is unsurprising given the comparative frequency with which those courts address FOIA issues. Two fairly recent district court decisions have thoroughly summarized the requirements that emerge from that case law regarding standing to seek prospective FOIA relief. The first case is *National Security Counselors v. CIA*, 931 F.Supp.2d 77 (D.D.C. 2013) ("*NSC*"). Reviewing numerous previous decisions from that District, *NSC* concludes that "future injury is satisfied" where "FOIA requesters challenge an alleged ongoing policy or practice *and* can demonstrate that they have [other] pending FOIA requests that are likely to implicate that policy or practice." *Id.* at 93 (emphasis added). According to *NSC*, those other pending requests, to the extent they are likely to implicate the alleged policy, make it "concretely apparent" that the plaintiff will probably face the same injury in the future. *Id.*

The second case worth noting is *Tipograph v. Department of Justice*, 146 F.Supp.3d 169 (D.D.C. 2015). *Tipograph* has a somewhat broader view than *NSC*, in that it discusses three methods of demonstrating standing based on predicted future FOIA denials. One of those methods is that expounded upon by *NSC*, *i.e.*, alleging other outstanding FOIA requests—although *Tipograph* characterizes this as only "[o]ne way for a plaintiff to make [a] showing" of "concrete plans" to file additional FOIA requests. *Id.* at 176. A second method of establishing standing is by showing that the plaintiff was specifically in the business of requesting, compiling, and reselling information obtained through FOIA requests. *Id.* at 175–76. Such a business would probably have a "consistent track record" of requesting information likely to be withheld by the alleged pattern or practice, thus "impl[ying] that it would continue to file FOIA requests in the future and have those requests denied under the challenge policy, thereby demonstrating that it would suffer ongoing injury." *Id.* at 176. A third method of establishing standing would be through very specific allegations regarding a FOIA request that the plaintiff planned to make in the near future. *Id.* at 176–77.

The foregoing decisions are instructive but not binding on this Court, and the Court therefore returns to the ultimate question of whether Smith has alleged a sufficiently "imminent" future injury—a "substantial risk" that ICE will invoke the Fugitive Practice to deny one of her future FOIA requests. *See SBA*, 134 S.Ct. at 2341. In this regard, the Court is mindful of *Lujan*'s instruction (*see* Part II, above) that there is a difference between the standing inquiry at the pleading phase as compared to later phases of the case. This case, of course, remains in the pleading phase. In addition, the Court refuses to impose any sort of formalistic *sine qua non* of standing for prospective relief. "There is no set probability number that separates a sufficient prospect of repetition from an insufficient prospect." 13C *Wright & Miller* § 3533.8.1.

Smith alleges that FOIA requests are an integral part of her practice as an immigration attorney because most of her clients are not legally savvy and therefore the client's A-File is often the only useful record of "[the] agency [the client] met with, and what type of interaction transpired, and what the legal issues may be." (ECF No. 32 ¶ 28.) Smith also alleges that she "regularly submits FOIA requests to the government that are related to non-citizen clients who may be deemed to be 'fugitives' by ICE." (*Id.* ¶ 35.) Smith has also alleged three instances in which her FOIA requests have been denied based on the Fugitive Practice. (*Id.* ¶¶ 20, 29, 32.) Finally, ICE's own words establish that ICE indeed has a self-described "practice"

of denying FOIA requests that could assist a fugitive alien.

ICE attacks these allegations through a "divide and conquer" approach, analyzing each one in isolation and demonstrating that the allegation does not, by itself, establish standing. (*See* ECF No. 32 at 9–11.) ICE is likely correct that no single allegation, on its own, would be enough to support standing, but that is also irrelevant. The question is whether the allegations, taken together, establish a sufficient probability that Smith will have a future FOIA request rejected based on the Fugitive Practice.

Smith's case in this regard is not overwhelming. The fact that she "regularly" submits FOIA requests but has alleged only three instances of denial based on the Fugitive Practice is concerning. But again, there is no predetermined number of prior denials, combined with future intentions, that distinguishes a plaintiff with standing and one without. On this record at the pleading phase, the Court finds that Smith has presented a sufficiently "concrete" allegation of likely future harm based on the Fugitive Practice—sufficient, at least, to meaningfully "reduce the possibility of deciding a case in which no injury would have occurred at all." *Lujan*, 504 U.S. at 564 n.2, 112 S.Ct. 2130. Smith accordingly possesses Article III standing to pursue this lawsuit beyond the pleading phase.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. ICE's Motion to Dismiss [the] First Amended Complaint for Lack of Subject Matter Jurisdiction (ECF No. 35) is DENIED; and

2. If Smith still wishes to take discovery, she must renew her motion in that regard (*see* ECF No. 42) no later than April 14, 2017; and must include a

proper D.C.COLO.LCivR 7.1(a) certificate of conferral in that motion.